IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NAQUAN KARON HIGHT, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 20-1716-CFC-JLH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Naquan Karon Hight appeals from unfavorable decisions of the Commissioner of the Social Security Administration[1] denying his applications for child's insurance benefits and supplemental security income ("SSI") benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

The parties filed cross-motions for summary judgment. (D.I. 14; D.I. 18.) For the reasons announced from the bench on February 11, 2022, I recommend that the Court DENY Plaintiff's motion and GRANT the Commissioner's cross-motion, as I conclude that the Commissioner's decisions are supported by substantial evidence and that there are no reversible errors.

**I.   LEGAL STANDARDS**

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijikazi was automatically substituted for former Commissioner of Social Security Andrew Saul when she succeeded him on July 9, 2021.

1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014).  In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry.  *See* 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual

2

> functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II.   DISCUSSION

My Report and Recommendation was announced from the bench on February 11, 2022, as follows:

> I'm ready to give you my reports and recommendations on the cross-motions for summary judgment in *Hight v. Kijakazi* and the cross-motions for summary judgment in *Charlier v. Kijakazi*.
>
> I will summarize the reasons for my recommendations in a moment. But before I do, I want to be clear that my failure to address a particular argument advanced by a party does not mean that I did not consider it. We have carefully considered the pertinent portions of the administrative record and the parties' briefs in both cases. I am not going to read my understanding of the applicable law into the record today; however, we will incorporate the rulings I am about to state into a separate, written document, and we will include a summary of the applicable law in that document.
>
> I'll start with *Hight v. Kijakazi*. For the reasons that follow, I recommend that Mr. Hight's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.
>
> Mr. Hight is a young man with severe mental disabilities. This appeal concerns his requests for child's insurance benefits and supplemental security income benefits. The ALJ issued two decisions at issue here. In her first decision, the ALJ addressed Hight's claim for child's insurance benefits and found that he was not disabled prior to November [] 2017, the date he turned twenty-two years old. In a second decision, the ALJ addressed Hight's claim for SSI and found that he was not disabled at any time after July 1, 2014, the date his prior student benefits were terminated. The two decisions reached similarly-grounded conclusions. Hight's briefing to this Court does not suggest that there are any differences

3

between the ALJ's findings in the two decisions that are relevant to his arguments. Accordingly, I'll do as Hight does and treat them together.

Hight has never worked, but he graduated from high school and, at the time of the Commissioner's decision, he was living at home and was enrolled part time in community college. The ALJ found at step two that Hight had three severe impairments: autism spectrum disorder, attention deficit hyperactivity disorder (ADHD), and specific developmental learning difficulty.[2] At step three, the ALJ found that Hight's impairments did not meet the standards for a listed impairment, so she went on to step four.[3]

At step four, she found that Hight had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can never climb ladders, ropes, or scaffolds; he can have occasional exposure to extreme heat, extreme cold, vibrations, fumes, odors, dusts, gases, and poor ventilation; he can tolerate lights no brighter than a typical office setting and noise no louder than a typical office setting level; he is limited to simple, routine, and repetitive tasks, but not at production pace, for instance assembly-type work; he can perform simple work-related decisions; he can tolerate few changes in a routine work setting; he can frequently interact with supervisors and coworkers but only occasionally work in tandem with others; and he can occasionally interact with the public."[4] At the last step, the ALJ found that a person with Hight's RFC could work as[, e.g.,] a laundry folder, a mail clerk, or a hand packager.[5]

Hight challenges the ALJ's RFC determination. He argues that, in formulating the RFC, the ALJ failed to consider all of the psychosocial supports that Hight was receiving at home and school. In particular, Hight suggests that the ALJ failed to sufficiently consider the fact that he currently lives at home and that he receives more help at home and at school than a young adult without his impairments would generally receive. I disagree, and I conclude that the ALJ's decision is supported by substantial evidence and that there are no reversible errors.

---

[2] (Transcript of Social Security Proceedings, D.I. 12 ("Record" or "R."), at 13, 32.)

[3] (*Id.*)

[4] (R. 15, 34–35.)

[5] (R. 19–20, 38–39.)

4

To be clear, both sides agree that Hight has severe mental disabilities that cause symptoms. Moreover, no one disputes that an ALJ must consider evidence of help and accommodations a claimant receives, along with all of the other evidence, when formulating their RFC.[6] Moreover, the law is clear that, when fashioning a claimant's RFC, the ALJ must set forth what the claimant can do—expressed in the form of work-related functions—without any additional help or accommodations. Although Hight's argument to this Court is not entirely clear, he is incorrect to the extent that he is suggesting the ALJ was required to expressly reference or state the accommodations Hight receives at school in the RFC itself. The RFC is supposed to represent the most a claimant can do without accommodations.[7]

In this case, the ALJ thoroughly reviewed the evidence—including the evidence that Hight receives help at home and accommodations at school—and the ALJ explained why the evidence led to her conclusions that Hight had the capacity to do simple, routine, repetitive work that involved simple decisions, few changes in the routine, and limits on his social interaction.

There was substantial evidence to support the ALJ's RFC determination. The ALJ had evidence of Hight's daily activities, scholastic achievements (with some support), attempts to work, and conflicting medical and mental health opinions. It is true that the mental health professionals who assessed Hight opined that the accommodations he receives help his current level of functioning, but that does not necessarily lead to a conclusion that he would be completely unable to function without those accommodations. And there is no evidence that the help and accommodations that Hight receives are so crucial that it was unreasonable for the ALJ to credit the evidence that she credited.

---

[6] *See, e.g.*, SSR 11-2p, 76 Fed. Reg. 56263, 56266 (Sept. 12, 2011); 20 C.F.R 404.1545(a)(3), (e) ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . ."); SSR 96-8p, 61 Fed. Reg. 34475, 34477 (July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as . . . Reports of daily activities," and "Need for a structured living environment . . . ." (emphasis in original)).

[7] 20 C.F.R. § 404.1545(a); SSR 11-2p, 76 Fed. Reg. at 56266–67 ("[W]e consider how well the young adult would function without the extra help."); SSR 96-8p, 61 Fed. Reg. at 34477 ("[N]onexertional capacity must be expressed in terms of work-related functions.").

This case is distinguishable from [*Grier v. Saul*].[8] In that case, the claimant was schizophrenic, and the only evidence of his successful functioning was when he avoided unfamiliar individuals and was supported by individuals who could ensure that he maintained compliance with medication that he needed to function.[9] There, the Third Circuit held that the ALJ failed to explain and support her conclusion that he could function without such a supportive environment.[10] In this case, the ALJ considered the fact that Hight was receiving psychosocial supports at home and school but pointed to other evidence, including Hight's daily activities, supporting her finding that Hight could nevertheless do simple, routine, repetitive work that involved simple decisions, few changes in the routine, and limits on his social interaction.

Hight does not identify any particular evidence he says the ALJ failed to consider or address in her step four analysis. Indeed, Hight acknowledges that the ALJ's step four analysis addressed the extra supports he receives.[11] What Hight really seems to be suggesting is that the ALJ must have failed to consider the evidence of his current extra supports because she concluded that Hight could work in accordance with the limitations in the RFC without those supports. But that is nothing more than an argument that the ALJ should have weighed the evidence differently. This Court's role is not to reweigh the evidence; it is to determine whether the ALJ's findings are supported by substantial evidence. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[12] Here, there was a wide variety of evidence that could persuade a reasonable ALJ that Hight was capable of some work with limitations but without the extra supports.

In sum, there was conflicting evidence and the ALJ considered all of it. I cannot say she did so unreasonably or illogically. Thus, I find no legal error.

---

[8] 822 F. App'x 166 (3d Cir. 2020).

[9] *Id*. at 170–71.

[10] *Id.*

[11] D.I. 15 at 15.

[12] *Biestek*, 139 S. Ct. at 1154.

> I recommend that Plaintiff's motion for summary judgment be denied and Defendant's cross-motion for summary judgment be granted.

## III. CONCLUSION

I recommend that Plaintiff's motion for summary judgment (D.I. 14) be DENIED and Defendant's motion for summary judgment (D.I. 18) be GRANTED. I recommend that the Court enter judgment in favor of Defendant and CLOSE the case.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: February 25, 2022

                                                The Honorable Jennifer L. Hall
                                                UNITED STATES MAGISTRATE JUDGE